327 S.E.2d 438

**Mulvina WHITEHAIR**

v.

**HIGHLAND MEMORY GARDENS, INC.**

No. 16247.

Supreme Court of Appeals of West Virginia.

March 1, 1985.

Daniel V. Lane, Clarksburg, for appellant.

Berry, Waters, Warner & Harris, Boyd L. Warner, Clarksburg, for appellee.

MILLER, Justice:

The plaintiff appeals this suit which seeks damages for the mishandling and loss of several bodies during their exhumation and reburial. The Circuit Court of Upshur County granted defendant's motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. For the reasons set out, we reverse the judgment.

Because this case was dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, we apply the traditional standard set out in Syllabus Point 3 of *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977):

> "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84] (1957)."

*See also Flowers v. City of Morgantown,* 166 W.Va. 92, 272 S.E.2d 663 (1980); *John W. Lodge Distrib. Co. v. Texaco, Inc.,* 161 W.Va. 603, 245 S.E.2d 157 (1978). For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the facts as set out in the plaintiff's complaint are deemed to be true. *Sticklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148, 157 (1981); *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 717, 246 S.E.2d 907, 920 (1978); *John W. Lodge Distrib. Co.,* 161 W.Va. at 605, 245 S.E.2d at 158. The complaint reveals the following facts.

In January, 1980, the defendant, Highland Memory Gardens, entered into a contract with the West Virginia Department of Highways to relocate bodies buried in the Old Baptist Cemetery in Buckhannon, West Virginia. According to the complaint, this removal was done in an incredibly careless manner. The plaintiff asserts that the remains of her sister and two aunts were lost or misplaced after removal, and that the defendant failed to remove all of the remains of her cousin. She also alleges that the defendant refused to remove the reasonably accessible remains of her uncle and

father, which presumably now rest somewhere under the new highway constructed through the cemetery. Furthermore, despite its assurances that it would do so, the defendant failed to notify the plaintiff of when the disinterment would take place so that she could be present.

All of these actions and omissions are alleged to be not only negligent but wilful, wanton and reckless, and resulting in great mental anguish and suffering on the part of the plaintiff. No pecuniary loss or physical injury is alleged. There is no dispute that the defendant had lawful authority to disinter and reinter these bodies pursuant to its contract with the State. The plaintiff's sole challenge is to the manner in which these acts were performed.

This case presents a question of first impression in this State as to whether a person can recover damages for mental anguish caused by the intentional, reckless or negligent mishandling of a relative's remains where the removal itself is lawful. Our previous cases authorizing injunctions and the recovery of damages are not directly applicable, because they involved wrongful removals. *See Sherrard v. Henry*, 88 W.Va. 315, 106 S.E. 705 (1921); *England v. Central Pocahontas Coal Co.*, 86 W.Va. 575, 104 S.E. 46 (1920); *Ritter v. Couch*, 71 W.Va. 221, 76 S.E. 428 (1912).

The plaintiff seeks recovery for the intentional infliction of emotional distress, sometimes known as the tort of outrage, a cause of action recognized in Syllabus Point 6 of *Harless v. First National Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another

is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The facts alleged in the complaint might state a cause of action on this theory. A number of courts have held that intentional misconduct involving the disposition of corpses can create a cause of action for intentional infliction of emotional distress.[1] However, independent of the claim of the tort of outrage, the complaint seeks to recover damages for emotional distress by virtue of the defendant's negligent mishandling of the disinterment and reburial. It is this cause of action that appears to be the main focus of the complaint.

A brief historical survey of the law may be helpful. Under the early common law in England, matters relating to the burial and preservation of dead bodies were within the exclusive jurisdiction of the ecclesiastical courts, so that no action for damages would lie for injuries or indignities inflicted upon a corpse, or for interference with the right of burial. *Infield v. Cope*, 58 N.M. 308, 311, 270 P.2d 716, 718 (1954); P. Jackson, The Law of Cadavers 126 (2d ed. 1950); 25A C.J.S. *Dead Bodies* § 8(4) at 516 (1966). Remedies were afforded, however, if any element of trespass to real or personal property appeared in the molestation of the remains of the dead. *Infield v. Cope, supra; Pierce v. Proprietors of Swan Point Cemetery*, 10 R.I. 227, 236, 237 n. 1 (1872); P. Jackson, *supra*, at 126 n. 16.

In this country, where we have no ecclesiastical courts, the law has long recognized a "quasi-property" right in the survivors to control the disposition of a loved

---

1. *See Tarar v. Pakistan Int'l Airlines*, 554 F.Supp. 471 (S.D.Tex.1982) (delay in transporting body); *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976) (funeral director lied concerning order in which plaintiff's father and stepmother had died, need for sealer casket, and appearance of body; and refused to comply with the plaintiff's request to delay the funeral procession, thereby preventing the plaintiff from viewing the interment); *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700 (Mo.Ct.App.1978) (decedent buried without vault in shallow grave so that body was uncovered by passage of heavy machinery); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970)

(withholding body and burying without authorization); *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn.Ct.App.1975) (hospital placed body of premature infant who died shortly after birth in bottle of formaldehyde and displayed it to the mother weeks later when she inquired as to its disposition). *See also Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wash.2d 959, 577 P.2d 580 (1978) (en banc) (complaint stated cause of action for negligent infliction of emotional distress where it alleged that funeral home failed to provide urn and decedent's mother handsifted plastic bag full of ashes believing the remains to be packing material).

one's remains. This right has been discussed in a number of our earlier decisions. In *England,* 86 W.Va. at 577–78, 104 S.E. at 47, for instance, we observed that:

"It is conceded that at the common law there was no right of property in a dead body, and that once interred it became a part of the soil where laid; and in England the protection of sepulcher was generally controlled by the Ecclesiastical law. 2 Blackstone, 428; *Meagher v. Driscoll,* 99 Mass. 281, 96 Am.Dec. 759. In this country we have no Ecclesiastical law controlling the subject. The right however to bury a corpse and to preserve the remains is a legal right which the courts of this country recognize and protect; and this right is regarded as a quasi right of property. 17 Corpus Juris, p. 1139; 8 Ruling Case Law, p. 684; *State v. Highland,* 71 W.Va. 87, 76 S.E. 140. And the right, according to the authorities in this country, exists in near relatives, and is cognizable in courts of law as well as in equity, and so long as the right of interment exists it may be vindicated by them in such courts."

See also *Sherrard,* 88 W.Va. at 319–20, 106 S.E. at 707; *Ritter,* 71 W.Va. at 226–28, 76 S.E. at 430; *State v. Highland,* 71 W.Va. 87, 89–90, 76 S.E. 140, 141 (1912).

 The quasi-property rights of the survivors include the right to custody of the body; to receive it in the condition in which it was left, without mutilation; to have the body treated with decent respect, without outrage or indignity thereto; and to bury or otherwise dispose of the body without interference. *Infield,* 58 N.M. at 312, 270 P.2d at 719. *See generally* 25A C.J.S. *Dead Bodies* §§ 8(1)–8(4) (1966); 22 Am.Jur.2d *Dead Bodies* §§ 4, 17, 30, and 36 (1965); Annot., 21 A.L.R.2d 472 (1952) (removal and reinterment); Annot., 48 A.L. R.3d 240 (1973) (liability for withholding corpse); Annot., 83 A.L.R.2d 955 (1962) (liability for performing autopsy); Annot., 48 A.L.R.3d 261 (1973) (liability for negligent

embalming).[2] Losing remains, so that they may not be decently interred, also gives rise to a cause of action for damages. *See Allen v. Jones,* 104 Cal.App.3d 207, 163 Cal.Rptr. 445 (1980); *Klumbach v. Silver Mount Cemetery Ass'n,* 242 A.D. 843, 275 N.Y.S. 180 (1934), *aff'd per curiam,* 268 N.Y. 525, 198 N.E. 386 (1935).

 Although most cases seem to involve incidents occurring prior to burial, the surviving spouse and next of kin have some rights relating to the body even after it has been interred. As our own cases indicate, they may act to prevent, or recover damages for, unlawful disinterment or desecration. *England v. Central Pocahontas Coal Co., supra; Ritter v. Couch, supra.* Where bodies are lawfully disinterred, the surviving spouse or next of kin usually has the right to specify the place of reinterment. *Flores v. DeGalvan,* 127 S.W.2d 305 (Tex.Civ.App.1939); 22 Am. Jur.2d *Dead Bodies* § 23 (1965).

Contrary to the defendant's assertions, the fact that it was authorized to disinter and reinter bodies resting in the Old Baptist Cemetery does not mean that no cause of action can lie against it for the manner in which the transfer was accomplished. "Mere right or authorization to perform a disinterment and removal is not necessarily decisive. The act must be performed in a decent manner and with due regard to the rights of persons interested." Annot., 21 A.L.R.2d 472, 489 (1952); 22 Am.Jur.2d *Dead Bodies* § 23 at 572 (1965).

 Where possible, survivors are entitled to notice, and a reasonable opportunity to be present when bodies are moved from one resting place to another so that they can be sure that the remains are removed with the proper religious ceremonies, and without indignities, and so that they will be sure of the final resting place of the decedent. *Louisville Cemetery Ass'n v. Downs,* 241 Ky. 773, 45 S.W.2d 5 (1951); *North East Coal Co. v. Pickelsim-*

---

**2.** These rights are recognized in the Restatement (Second) of Torts § 868 (1979): "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or

cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." Comment e following this section indicates that the word "removes" includes disinterment.

er, 253 Ky. 11, 68 S.W.2d 760 (1934); *Block v. Har Nebo Cemetery Co.*, 14 Pa. D & C 237 (1930); Note, *Damages: Pleading: Property: Who May Recover for Wrongful Disturbance of a Dead Body*, 19 Cornell L.Q. 108, 110 (1933); *see Gostkowski v. Roman Catholic Church of the Sacred Hearts of Jesus and Mary*, 262 N.Y. 320, 186 N.E. 798 (1933); *cf. Spiegel v. Evergreen Cemetery Co.*, 117 N.J.L. 90, 186 A. 585 (1936) (right to be present at burial). Thus, the defendant's alleged failure to notify the plaintiff of the date of disinterment and to give her a reasonable opportunity to be present is actionable.[3]

■ We believe that losing bodies, and parts of bodies, after disinterment and thereby preventing reinterment, is also actionable. Two cases deserve particular attention. In *Payne v. Alabama Cemetery Ass'n, Inc.*, 413 So.2d 1067 (Ala.1982), the daughter of the deceased wished to have her grandmother buried in the same grave as her mother, so she arranged for a funeral home to deepen the grave so that it could hold an additional vault. Four years after her grandmother was buried, she discovered that the grave was sinking. Upon investigating, she discovered that her mother's vault had never been replaced after the grave was enlarged. The court acknowledged that the destruction or loss of her body gave rise to a cause of action, even though the initial disinterment had been authorized by the plaintiff:

> "Plaintiff's action is grounded upon the legal rights vested in the next of kin to maintain an action for unwarranted interference with a buried body. We hold that such an action may be grounded in a non-trespass tort as well as in trespass. The plaintiff, being the nearest relative present, is a proper party to bring the action in tort, irrespective of any other possible theory of recovery." 413 So.2d at 1071.

In *Sanford v. Ware*, 191 Va. 43, 60 S.E.2d 10 (1950), the plaintiff decided to move the body of her husband from one cemetery to another. About one month after the reinterment, she heard rumors that the body had not been removed. In order to satisfy her mind, she employed another undertaker to investigate the matter, and he discovered that the casket, case and part of the headstone had been left in the old grave. The new grave "consisted of a trench less than thirty inches in depth and barely of sufficient width to accommodate the body" which "was found, without the benefit of a casket, case, or shroud, only a few inches below the surface of the ground." 191 Va. at 46, 60 S.E.2d at 11. The Supreme Court of Appeals of Virginia upheld a judgment for negligence in disinterring and reinterring the remains, and for indignities visited upon them, explaining that:

> "Although there is no right of property in a commercial sense in the dead body of a human being, the right to bury and preserve the remains is recognized and protected as a quasi-property right. . . .

> "Consequently, an action *ex delicto* will lie against a wrongdoer for the unlawful invasion of a near-relative's rights with respect to a dead body, such as committing an act of indignity upon it, or for a breach of duty in respect to it." 191 Va. at 48, 60 S.E.2d at 12. (Citations omitted).

■ *Sanford, Payne,* and the cases involving loss of bodies prior to burial support the proposition that a cause of action exists for negligently or intentionally mishandling or losing a dead body, even when its disinterment and reinterment are authorized. This is compatible with law from other jurisdictions as well as our holding that an unlawful disinterment can give rise to damages. *England v. Central Pocahontas Coal Co., supra.*

■ A cause of action for negligent or intentional mishandling of a dead body does not require a showing of physical injury or pecuniary loss. Mental anguish is a

**3.** Here, the plaintiff had apparently contacted the defendant to request that she be notified when the disinterment would start. The requirement that survivors be notified of a disinterment means only that reasonable efforts be undertaken to notify a survivor and does not mean that all possible survivors must be notified.

sufficient basis for recovery of damages. *St. Louis S.W. Ry. Co. v. White*, 192 Ark. 350, 91 S.W.2d 277 (1936); *Allen v. Jones*, 104 Cal.App.3d 207, 163 Cal.Rptr. 445 (1980); *Blanchard v. Brawley*, 75 So.2d 891 (La.Ct.App.1954); *Larson v. Chase*, 47 Minn. 307, 50 N.W. 238 (1891); *Weingast v. State*, 44 Misc.2d 824, 254 N.Y.S.2d 952 (Ct.Cl.1964); Restatement (Second) of Torts § 868 comment a (1979); *contra Estate of Harper v. Orlando Funeral Home*, 366 So.2d 126 (Fla.Dist.Ct.App.1979). As noted in Prosser & Keeton on Torts 362 (5th ed. 1984), this is an exception to the general rule that damages for mental distress cannot ordinarily be recovered for a negligent act that does not produce some physical injury: [4]

"In two special groups of cases, however, there has been some movement to ... allow recovery for mental disturbance alone.... The other group of cases has involved the negligent mishandling of corpses. Here the traditional rule has denied recovery for mere negligence without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation. What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." (Footnotes omitted).

In *England*, the suit sought damages for mental anguish for unlawful disinterment and, while this Court recognized that damages could be obtained, it did not discuss the damage theory.

■ Finally, although the issue of the proper party plaintiff is not raised, we believe it is important to note that the cause of action ordinarily belongs to the party with the right to possession of the body. Restatement (Second) of Torts § 868 (1979); Annot., 48 A.L.R.3d 240, 245 (1973); Annot., 48 A.L.R.3d 261, 264 (1973); *see Dumouchelle v. Duke University*, 69 N.C. App. 471, 317 S.E.2d 100 (1984); *Simpkins v. Lumbermens Mut. Casualty Co.*, 200 S.C. 288, 20 S.E.2d 733 (1942). This is usually the surviving spouse, *Steagall v. Doctors Hospital*, 171 F.2d 352 (D.C.1948); *Southern Life & Health Ins. Co. v. Morgan*, 21 Ala.App. 5, 105 So. 161 (1925); *Edwards v. Franke*, 364 P.2d 60 (Alaska 1961); *Pollard v. Phelps*, 56 Ga.App. 408, 193 S.E. 102 (1937); *Finn v. City of New York*, 70 Misc.2d 947, 335 N.Y.S.2d 516 (1972), *reversed on other grounds*, 76 Misc.2d 388, 350 N.Y.S.2d 552 (1973); *Apostle v. Pappas*, 154 Misc. 497, 277 N.Y.S. 400 (1935); *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 A. 878 (1904); Annot., 48 A.L.R.3d 240, 243 (1973), provided that he or she was living with the decedent at the time of death, *Southern Life & Health Ins. Co. v. Morgan, supra; Steagall v. Doctors Hospital, supra; Teasley v. Thompson*, 204 Ark. 959, 165 S.W.2d 940 (1942), and has not waived his or her right. *Southern Life & Health Ins. Co. v. Morgan, supra; Teasley v. Thompson, supra; Apostle v. Pappas, supra; Gostkowski v. Roman Catholic Church of Sacred Hearts of Jesus and Mary, supra.* If the spouse is deceased, the cause of action passes to the next of kin, in order of relation established by the statute governing intestate succession. *Teasley v. Thompson, supra; North East Coal Co. v. Pickelsimer, supra; Pettigrew v. Pettigrew, supra; Simpkins v. Lumbermens Mut. Casualty Co., supra.*

■ It should also be noted that the wishes of the deceased concerning the disposition of his body should be considered. Courts have held that this preference is a

---

**4.** We have recognized the general rule in *Harless*, 169 W.Va. at 689, 289 S.E.2d at 701–02, where we quoted from *Monteleone v. Co-Operative Transit Co.*, 128 W.Va. 340, 347, 36 S.E.2d 475, 478 (1945), and made this conclusion:

"Another more difficult category is where the claim for emotional distress arises from a negligent act which produces no physical injury but causes emotional distress. In this area courts are more reluctant to permit recovery for emotional distress particularly where the plaintiff was outside the zone of any physical danger arising from the negligent act and where there is no close relationship with the victim. Annot., 94 A.L.R.3d 486 (1979)."

significant, if not a controlling, factor even when contrary to the wishes of a surviving spouse. *See, e.g., Dumouchelle v. Duke University, supra; Apostle v. Pappas, supra; see generally* Annot., 54 A.L.R.3d 1037 (1974); Annot., 7 A.L.R.3d 747 (1966).

Even though we have overruled the motion to dismiss, we do not intimate that the plaintiff is entitled to recover. Obviously, the actual facts developed will control this issue. We only hold that based on the general allegations in the complaint, the motion to dismiss should not have been granted.

For the foregoing reasons, the judgment of the Circuit Court of Upshur County is reversed and this case is remanded.

Reversed and Remanded.